Moll et ux. *v.* Dickson, Appellant.

Argued October 11, 1937.

Before KELLER, P. J., CUNNINGHAM, BALD-

Rige, Stadtfeld, Parker, James and Rhodes, JJ.

*Walter D. Stewart,* for appellant.

*John W. Hallahan,* for appellees.

Opinion by Stadtfeld, J., December 17, 1937:

This is an action in assumpsit to recover $500 paid by plaintiffs to defendant on account of purchase price of certain real estate located at Drexel Hill, Pa., under a written receipt, dated June 15, 1936, given by the defendant through his agent, R. Imschweiler. The plaintiffs filed a statement of claim to which defendant filed an affidavit of defense. Plaintiffs entered a rule on the defendant for judgment for want of a sufficient affidavit of defense. Judgment was entered thereon for the plaintiffs in the amount of $521, the amount of the deposit with interest, in an opinion by Gable, J.

The following facts may be considered as admitted by defendant, or not denied or insufficiently denied: The plaintiffs orally agreed to buy a lot with a house thereon to be completed. They paid $50 on account of the purchase and received from defendant's agent, a receipt dated June 15, 1936, setting forth the terms of the purchase, which in part are as follows: purchase price

$8,000; house to be completed with papering, painting, electric fixtures, hardwood floors, " 'also a Delco burner' to be included with tank on outside", house to be completed before settlement, and settlement to be made within sixty days; an additional deposit to be paid on July 5th, 1936, in the sum of $450. This receipt was signed by defendant's agent:—"Subject to approval. Wm. T. Dickson & Co. by R. Imschweiler." It was not signed by the plaintiffs.

On June 24, 1936, the plaintiffs were "told, notified and informed" that the agreement to sell had been approved by defendant and the title holder, Howard Hosmer. Plaintiffs paid the additional deposit of $450 on July 7, 1936. On July 13, 1936, plaintiffs advised defendant they could not complete the purchase because of the illness of plaintiff, Jennie Moll, and requested a return of the $500 paid on account. The defendant at no time was the owner of the said premises, the subject matter of the agreement of sale. The title to the premises from March 2, 1936, until September 24, 1936, when it was conveyed to one Walter Z. Shiber, was in one Howard Hosmer. Defendant does not allege any agreement of purchase or other obligation on the part of said Howard Hosmer to convey the title to him. The plaintiffs did not sign the above referred to agreement to purchase. About July 13, 1936, defendant tendered plaintiffs a deed executed by Howard Hosmer. Plaintiffs had no knowledge that defendant was not the owner of said premises until said deed was tendered him. August 14, 1936, was the day for settlement, under defendant's agreement. August 15, 1936, defendant agreed to sell the premises to one Walter Z. Shiber, without the Delco oil burner, for $8,500 which was five hundred dollars more than he agreed to sell to plaintiffs with the Delco oil burner. September 24, 1936. Howard Hosmer conveyed the premises to Walter Z. Shiber, without the Delco oil burner.

When defendant's agent signed the agreement with defendant's name "subject to approval" it required such approval as would obligate the defendant to convey the property; that is an approval in writing. Sec. 87 of the Restatement of Law of Agency states: "To become effective as ratification, the affirmance must be by the person identified as the principal at the time of the original act ......"

The Statute of Frauds (Act of March 21, 1772, 1 Sm. Laws 389) 33 PS sec. 1 requires that the authority of an agent to sell real estate must be in writing in order to bind the principal. When the agent put in the agreement "Subject to approval" he notified the plaintiffs that he did not have authority to bind his principal. His authority of course, could be ratified by defendant, but only by writing. Acquiescence is not sufficient. Neither is parol ratification.

In *Allegany Gas Co. v. Kemp,* 316 Pa. 97, 174 A. 289, the Supreme Court approved the following language of the lower court, at pp. 105, 106: " 'Plaintiffs insist that by her acquiescence and without any writing signed by her she became bound as a vendor by the contract made by her husband. To this proposition we cannot assent. The testimony is that she did not sign this contract. Since the statute of frauds requires that an agent, in order to bind his principal, must have written authority to sell real estate, ratification of the unauthorized acts of an alleged agent must also be in writing: *Martz v. Bower,* supra (94 Pa. Superior Ct. 175). But she did have power to ratify the contract if the ratification was in writing signed by her. A subsequent ratification is equivalent to a prior authority: *McClintock v. Oil Co.,* 146 Pa. 144-61; ......' "

*Martz v. Bower,* 94 Pa. Superior Ct. 175, holds that since the statute of frauds requires that an agent, in order to bind his principal, must have written authority to sell real estate, ratification of the unauthorized

acts of an alleged agent must be in writing. The court said at p. 180: "At the threshold of the defendant's case he was confronted with the statute of frauds (Act of March 21, 1772, 1 Sm. Laws 389) which requires that the authority of an agent to sell real estate, or lease it for more than three years, must be in writing in order to bind his principal: *Mott v. Kaldes,* 288 Pa. 264; see also *McGowan v. Lustig-Burgerhoff Co.,* 93 Pa. Superior Ct. 227. The applicable provisions of the statute read: 'All ...... estates, in ...... lands, ...... made or created by livery and seisin only, or by parol, and not put in writing and signed by the parties so making or creating the same, or their agents, thereunto lawfully authorized by writing, shall have the force and effect of ...... estates at will only, and shall not, either in law or equity, be deemed or taken to have any other or greater force or effect, any consideration for making any such parol ...... estates, or any former law or usage, to the contrary notwithstanding.' " This case holds (p. 175) that since the statute of frauds requires that an agent, in order to bind his principal, must have written authority to sell real estate, ratification of the unauthorized acts of an alleged agent must also be in writing.

In *Mott v. Kaldes,* 288 Pa. 264, 135 A. 764, it was held at p. 272: "...... 'Where the statute requires written authority to enable an agent of lessor to make a lease for longer than the stated period, if an agent without written authority makes such a lease, an oral ratification or confirmation thereof by the lessor can give to the lease no greater force or effect than it would have had if the lessor had himself originally made it by an oral agreement;' ......"

Plaintiff was within his rights in withdrawing from the contract before its approval in writing by the defendant.

Section 88 of Restatement of Law of Agency says:

"To constitute ratification, the affirmance of a transaction must be before the third person has manifested his withdrawal from it either to the purported principal or to the agent, and before the offer or agreement has otherwise terminated or been discharged." The comment on this section reads: "Withdrawal by third person. Until affirmance, the relationship of the third person to purported principal is similar to that of an offeror to an offeree. Before such time, therefore, the third person is free to withdraw, either because he discovers that the principal has not authorized the transaction or for any other reason . . . . . ."

In *McClintock v. South Penn Oil Co.*, 146 Pa. 144, 23 A. 211, the court held, in the words of the syllabus: "A contract for the sale of real estate, signed for the vendor by an agent not having written authority to sign, will have the same force and effect, under the statute of frauds, sec. 1, Act of March 21, 1772, 1 Sm. L. 389, when ratified in writing by the vendor, as though signed by the agent in pursuance of lawful authority by writing; *provided, the vendee has not repudiated it before such ratification."* (Italics supplied). To same effect see 2 C. J. 524.

As the legal title was at no time in the defendant, the latter could not have given the plaintiffs a deed made by defendant.

Chief Justice GIBSON in *Cook v. Grant,* 16 S. & R. 198, said at p. 210: "Where the contrary is not stipulated, a purchaser is entitled to the conveyance and the covenants of the vendor himself."

In *Tiernan v. Roland,* 15 Pa. 429, Mr. Justice BELL, whose opinion at nisi prius was adopted by the appellate court, said at p. 436: "It is very true, that one man cannot substitute himself as vendor for another, with whom he has no privity or connection. A purchaser is not bound to accept title from any one but him from whom he bought, or his representatives, as was decided

in *Taylor v. Porter*, 1 Dana 422 . . . . . . ." To same effect see 66 C. J. 856.

As there was no forfeiture clause in the agreement, and the defendant did not have legal title to the premises agreed to be conveyed, he was neither ready nor able to perform his part of the contract at the specified time, and therefore cannot claim a forfeiture of plaintiffs' payments on account.

In *Artzerounian v. Demetriades*, 276 Pa. 303, 120, A. 142, the Supreme Court said at p. 306: "For a reason additional to that assigned by the court below, the judgment was proper. In their statement of claim, plaintiffs declared that defendant was unable to perform his part of the agreement prior to its expiration, because he had no legal title to the property. The affidavit meets this allegation with a bald denial, which is insufficient: *Parry v. First National Bank*, 270 Pa. 556. There is the further averment that plaintiffs were not able and willing to perform, but this did not meet plaintiffs' statement; they were not required to complete the purchase, by payment of the balance due until defendant could convey the legal title to the property. *Defendant in his affidavit does not aver that the legal title was vested in him; unless it was, and he could transfer it to plaintiffs, the latter were not in default, and not being in default, defendant could not lawfully forfeit the money they had paid."* (Italics supplied).

The mere fact that the plaintiffs, prior to the time for complete performance or final settlement, advised the defendant that they could not complete the purchase, does not place them in any different position, under the circumstances, than one who at the time for settlement, declines to proceed therewith. Under Restatement of Law of Contract, Sec. 318, Comment "d", the plaintiffs' conduct would be considered an anticipatory breach or a "breach by anticipatory repudiation.

390

...... An ordinary breach of contract that has once arisen cannot be utterly nullified or destroyed by any conduct of a defaulting party. Even though he so nearly performs his promise that no injury results, an action can be maintained and nominal damages recovered. In case of an anticipatory repudiation, however, withdrawal of it before either an action has been brought, or other change of position made by the other party to the contract nullifies all effects of the breach (section 319) ......"

For the reasons hereinbefore stated, defendant should not be permitted to retain as a forfeit, the $500 paid by plaintiffs on account of the purchase price.

Judgment affirmed.